UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP RAMEY,
    *Plaintiff*,

v.

GEOFFREY MORGAN,
    *Defendant*.

No. 3:17-cv-1086 (JAM)

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Philip Ramey claims that defendant Geoffrey Morgan retaliated against him on the basis of Ramey's exercise of his right to free speech under the First Amendment. Morgan now moves for judgment on the pleadings. For the reasons set forth below, I will grant the motion.

**BACKGROUND**

Ramey and Morgan both work for the police department in Branford, Connecticut. Ramey holds the position of sergeant, and Morgan holds the position of captain. In essence, Ramey's complaint alleges that Morgan falsely accused Ramey of using excessive force against a prisoner in order to retaliate against him because Ramey had previously exposed how Morgan allegedly gave a maliciously false, adverse job recommendation for a former Branford police officer who was seeking employment with another municipality.

According to the complaint, Ramey told Joseph Peterson, a former Branford police officer who had applied for a civilian job with the neighboring town of East Haven, Connecticut, how Morgan had tried to stop East Haven from hiring Peterson. Ramey "revealed" to Peterson "that the defendant [Morgan] had admitted to the plaintiff [Ramey] that he had intentionally attempted to prevent Mr. Peterson from obtaining employment by the Town of East Haven by

1

alleging that he was incompetent both in general and during his time as a Branford police officer, and recommending that East Haven not hire him." Doc. #22 at 2 (¶ 6). Morgan made those statements "maliciously," and, as he purportedly admitted to Ramey, "for the specific purpose of interfering with Mr. Peterson's efforts to find employment." *Id.* at 2–3 (¶ 6).

Based in part on what Ramey told Peterson about what Morgan had done, Peterson then filed a complaint in late 2016 with the internal affairs division of the Branford police department alleging that Morgan had "attempted to interfere with the proper and independent function of the Town of East Haven by making false allegations designed to prevent Mr. Peterson from obtaining employment with that municipality." *Id*. at 2 (¶ 6). Ramey was then interviewed by Branford police officers who were investigating Peterson's complaint, and he "truthfully answered their questions and disclosed his knowledge concerning the activities and statements of the defendant, . . . which were designed to interfere with the government of the Town of East Haven and to prevent a qualified individual from obtaining employment by that municipality." *Id*. at 3 (¶ 7). The Branford police investigation ultimately concluded in January 2017 that Peterson's allegations against Morgan were unsubstantiated. *Id*. (¶ 9).

On April 25, 2017, Morgan "falsely and maliciously accused the plaintiff [Ramey] of using excessive force against a prisoner, improper conduct as a police supervisor, violation of the departmental code of ethics, and conduct unbecoming an officer." *Id*. (¶ 10). Ramey alleges that all this was done to retaliate against him for his earlier statements about the Peterson matter. *Ibid*. The Branford police department investigated Ramey on these false charges and ultimately exonerated him. *Id*. at 3–4 (¶ 11).

Ramey subsequently filed this federal court complaint. I granted a motion for more definite statement to require Ramey to file an amended statement describing the general content

or substance of the statements that he believed were protected speech and the basis for retaliation by Morgan. Doc. #20. Ramey has done so, and Morgan now moves for judgment on the pleadings. Doc. #27. Among other arguments, Morgan contends that Ramey's speech is not subject to protection from job-related retaliation because it was not about a matter of public concern and because there is enough uncertainty about how the First Amendment applies in this context that Morgan is entitled to qualified immunity.

## DISCUSSION

The background principles that govern a Rule 12(c) motion for judgment on the pleadings are well established. The Court must accept as true all factual matters alleged in a complaint and draw all reasonable inferences in favor of the non-moving party, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018).

In order to maintain a valid claim for First Amendment retaliation, a plaintiff must allege facts showing that "(1) his speech or conduct was protected by the First Amendment; (2) the [governmental] defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). When a First Amendment retaliation claim is made in the context of a plaintiff's employment with the government, it is subject to a higher threshold than an ordinary First Amendment retaliation claim. Because a government employer—like any employer—has the right to maintain a reasonably efficient and orderly work environment, the government *qua* employer may restrict or penalize the speech of its own employees in ways that would not be acceptable if the government were regulating the speech of the citizenry in general.

*See Ricciuti v. Gyzenis*, 834 F.3d 162, 167–68 (2d Cir. 2016); *Lynch v. Ackley*, 811 F.3d 569, 577 (2d Cir. 2016).

For this reason, when a plaintiff is a public employee who claims that he has been the victim of First Amendment retaliation (such as discipline) in the government employment context, the plaintiff's speech is not subject to protection from adverse action unless the plaintiff's speech addressed a matter of public concern and unless the plaintiff spoke in his capacity as a citizen rather than an employee. *See Garcetti v. Ceballos*, 547 U.S. 410, 420–22 (2006); *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011). This determination of whether speech involves a matter of public concern and is made as a citizen rather than an employee is a question of law for a court to decide in light of the content, form, and context of a given statement. *Id.* (quotation marks and citation omitted); *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (same).[1]

On top of this framework, I must also consider whether Morgan is entitled to qualified immunity. The doctrine of qualified immunity protects a police officer from liability if "(1) his conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015) (internal quotation marks omitted). As the Supreme Court has explained, "a defendant cannot be said to have violated a clearly established right unless the right's contours

---

[1] Although Ramey was not actually subject to discipline, and Morgan was not actually Ramey's employer but was a higher-ranking colleague at the Branford police department, Ramey does not contest that the framework established by the Supreme Court in *Garcetti v. Ceballos* governs the Court's consideration of this case. *See, e.g.*, *Huth v. Haslun*, 598 F.3d 70, 71 (2d Cir. 2010) (applying *Garcetti* to First Amendment retaliation complaint against co-workers who initiated allegations leading to disciplinary action); *see also Rowe v. Benjamin*, 2012 WL 5306159, at *4–*6 (D.S.C. 2012) (discussing cases suggesting that *Garcetti* may not apply to public employee retaliation claims against retaliation by non-employer defendants but concluding that qualified immunity applies because "the law is at best unsettled" on this issue). I conclude that any argument by Ramey that the *Garcetti* framework should not apply to this case has been waived.

were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).

The Second Circuit has noted that "[t]o determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). The law may be clearly established if the decisions of the Supreme Court or the "decisions from this or other circuits clearly foreshadow a particular ruling on the issue." *Ibid.* (internal quotations omitted). Although there need not be "a case directly on point," it must nonetheless be clear that "existing precedent [has] placed the . . . constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *see also Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) (same).

Ramey alleges that he engaged in two kinds of speech activity: (1) that he told Peterson that Morgan had admitted to him that he gave adverse information to the Town of East Haven about Peterson in an effort to stop Peterson from getting a job with the Town of East Haven, and (2) that he subsequently spoke to Branford police investigators on the same subject of what Morgan had told him in the course of their investigation of Peterson's complaint. It is clear to me that these statements by Ramey about what Morgan had allegedly told him were not on a matter of public concern. To the contrary, they involved a matter of private concern to Peterson with respect to his hopes for employment with the Town of East Haven.

"The speech of a public employee is addressed to a matter of public concern where it can be fairly considered as relating to any matter of political, social, or other concern to the community," and "[t]o qualify, the speech must have a broader public purpose and not be merely calculated to redress personal grievances." *Colvin v. Keen*, 900 F.3d 63, 75 (2d Cir. 2018)

5

(internal quotations and citations omitted). As the Second Circuit has explained, "[w]e have also reasoned that speech is not on a matter of public concern where it has no practical significance to the general public," and "[e]xamples include speech alleging that a public school employee forged a signature on a teaching observation, survey questions about coworkers' office morale, speech concerning the speaker's own work assignments or salary, and speech accusing a supervisor of favoritism." *Id.* at 75–76 (internal quotation marks and citations omitted).

Ramey insists that his speech was on a matter of public concern because it involved "improper and malicious interference by defendant in the hiring activities of a public entity—the Town of East Haven—which was unconnected to either the plaintiff or the defendant." Doc. #29 at 4–5. But the statements must be viewed in their context, and this argument might have more force if Ramey's statements about Morgan's alleged misconduct had been made to the Town of East Haven itself, rather than privately to Peterson or within the reactive context of responding as a matter of one's job duties to an internal Branford police investigation. The content of Ramey's statements as well as their context compel a conclusion that these statements were not on a matter of public concern.

Even if I am wrong about whether Ramey's statements were about a matter of public concern, I would still conclude that Morgan is entitled to qualified immunity from Ramey's lawsuit. Although Ramey cites numerous cases in which various courts have found employees to have spoken out on matters of public concern (*Id.* at 5–8), he does not cite any factually analogous precedent suggesting that speech about a police officer's malicious efforts to interfere with someone else's application for a municipal job is a matter of public concern. It would not be obvious in light of pre-existing law that Morgan's alleged retaliatory conduct would amount to no less than a violation of Ramey's right to free speech under the First Amendment. *See Colvin*,

900 F.3d at 75 (affirming grant of summary judgment for lack of clearly established law that employee's advice of rights to co-employee who was being arrested by campus police was speech on a matter of public concern); *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (affirming grant of motion to dismiss on ground that "[b]ecause the specific question of whether the plaintiff's alleged union remarks were protected by the First Amendment was not beyond debate at the time of Moran and Mueller's alleged retaliation against Montero, . . . we conclude as a matter of law that under the claims as pled by Montero, these defendants are protected from liability by qualified immunity").

## CONCLUSION

For the reasons set forth above, Morgan's motion for judgment on the pleadings (Doc. #27) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 17th day of September 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge